**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MEDIA GENERAL OPERATIONS,
INCORPORATED, formerly known as
Richmond Newspapers,
Incorporated,
                    *Plaintiff-Appellant,*

              v.

RICHMOND NEWSPAPERS PROFESSIONAL
ASSOCIATION,
                    *Defendant-Appellee.*

No. 01-1953

PAMELA J. MASTROPAOLO; RICHMOND
NEWSPAPERS PROFESSIONAL
ASSOCIATION,
                    *Plaintiffs-Appellees,*

              v.

MEDIA GENERAL OPERATIONS,
INCORPORATED, formerly known as
Richmond Newspapers,
Incorporated,
                    *Defendant-Appellant.*

No. 01-1962

PAMELA J. MASTROPAOLO; RICHMOND
NEWSPAPERS PROFESSIONAL
ASSOCIATION,

*Plaintiffs-Appellants,*

v.

MEDIA GENERAL OPERATIONS,
INCORPORATED, formerly known as
Richmond Newspapers,
Incorporated,

*Defendant-Appellee.*

No. 01-1980

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-00-633-3, CA-00-644-3)

Argued: April 2, 2002

Decided: June 7, 2002

Before WILKINS, TRAXLER, and GREGORY, Circuit Judges.

Affirmed by unpublished opinion. Judge Traxler wrote the majority opinion, in which Judge Wilkins joined. Judge Gregory wrote an opinion concurring in part and dissenting in part.

**COUNSEL**

**ARGUED:** James V. Meath, WILLIAMS, MULLEN, CLARK & DOBBINS, Richmond, Virginia, for Appellant. Jay Joseph Levit, LEVIT, MANN & HALLIGAN, P.C., Richmond, Virginia, for Appellees. **ON BRIEF:** Shannon P. Garbett, WILLIAMS, MULLEN, CLARK & DOBBINS, Richmond, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

TRAXLER, Circuit Judge:

Media General Operations, Incorporated, publisher of the *Richmond Times-Dispatch* newspaper, appeals from the district court's refusal to vacate an arbitration award reinstating Pamela Mastropaolo, who had been terminated by Media General. Mastropaolo cross-appeals, challenging the district court's denial of her request for attorney's fees incurred in connection with her efforts to enforce the arbitration award. We affirm.

## I.

Pamela Mastropaolo began working for Media General in 1974. During her employment, Mastropaolo was a member of the Richmond Newspapers Professional Association, which had entered into a collective bargaining agreement with Media General. The collective bargaining agreement provided that "[t]here shall be no dismissals except for just and sufficient cause, which shall include but not be confined to: reduction of force, willful neglect of duty, gross misconduct and incompetency." J.A. 300. The agreement also provided that, upon request, an employee "shall receive written notice from the employer stating the cause of his or her dismissal." J.A. 300. The agreement did not define "gross misconduct."

In February 1999, Mastropaolo attended the Mid-Atlantic Quilt Festival. Although she attended the event for purely personal reasons (that is, she was not assigned by the newspaper to write a story about the festival), she used her press identification to gain free admission to the weekend festival. Mastropaolo began stealing quilting materials on the first day of the festival and continued the next day, stealing approximately $900 in fabric and other quilting supplies. She was caught by a vendor on the second day of the festival and was arrested. Mastropaolo was charged with two felony counts of larceny, and

Media General suspended her without pay, in accordance with its policy regarding employees charged with felonies.

Mastropaolo hired an attorney to represent her on the criminal charges. The attorney recommended that Mastropaolo plead guilty to the charges and explained that there was a strong likelihood that the judge at sentencing would reduce the felony charges to misdemeanors. When Mastropaolo told Bill Millsaps, the newspaper's executive editor, about her attorney's recommendation, Millsaps told her that if she pleaded guilty to or was convicted of a felony, they "didn't have anything to talk about. There's nothing [he could] do." J.A. 50. However, Millsaps told Mastropaolo that if she pleaded guilty to or was convicted of a misdemeanor, "then [they] might have something to talk about." J.A. 50.

Pursuant to a plea agreement, Mastropaolo thereafter pleaded guilty to one misdemeanor count of petit larceny and one felony count of grand larceny. The agreement reserved to Mastropaolo the right to request that the trial court amend the remaining felony charge to a misdemeanor charge. At the subsequent sentencing proceeding, the judge reduced the felony count to a misdemeanor, and Mastropaolo was formally found to be guilty of two misdemeanor petit larceny charges.

On June 1, 1999, after Mastropaolo pleaded guilty but before the felony charge was reduced by the trial judge, Media General terminated Mastropaolo. The company sent Mastropaolo a letter notifying her of its action, stating that she was being terminated "because of [her] guilty plea to a felony charge." J.A. 312. The initial draft of the letter specified Mastropaolo's misconduct at the festival as a reason for her termination, but the letter was revised to give only the felony guilty plea as the basis for the termination. Before terminating Mastropaolo, Media General had contacted the prosecutor in charge of Mastropaolo's case and learned that Mastropaolo had pleaded guilty to a felony and a misdemeanor charge and that it was possible the felony charge could be reduced at the upcoming sentencing hearing.

On June 2, Mastropaolo's criminal attorney sent Media General a letter stating that the "case is not over yet" and that "there is a better

than even chance" that the judge would allow the felony plea to be amended to a misdemeanor plea. J.A. 322. The attorney asked that the company reconsider its termination decision and at least wait until the July 29 final court date. Media General refused to reconsider the termination.

The union filed a formal grievance on Mastropaolo's behalf. Media General denied the grievance, and the matter proceeded to arbitration, in accordance with the terms of the collective bargaining agreement. The arbitrator ruled in favor of Mastropaolo and ordered her to be reinstated after serving a 30-day suspension without pay.

Media General then commenced this action, asking the district court to vacate the arbitration award because it was inconsistent with the terms of the collective bargaining agreement. For her part, Mastropaolo requested that the district court enforce the arbitration award, and she also sought an award of attorney's fees incurred in connection with her enforcement action. The district court refused to vacate the award and granted summary judgment in favor of Mastropaolo on her enforcement action. The court, however, denied Mastropaolo's request for attorney's fees. These appeals followed.

## II.

### A.

The Labor Management Relations Act gives federal courts the authority to review arbitration awards in labor disputes. *See* 29 U.S.C.A. § 185 (West 1998); *District 17, United Mine Workers of America v. Island Creek Coal Co.*, 179 F.3d 133, 136-37 (4th Cir. 1999). However, if reviewing courts were free "to delve into the merits of an arbitration award, then the federal policy of settling labor disputes by arbitration would be seriously undermined. Such judicial second-guessing would transform a binding process into a purely advisory one, and ultimately impair the value of arbitration for labor and management alike." *United States Postal Serv. v. American Postal Workers Union*, 204 F.3d 523, 527 (4th Cir. 2000) (citations, internal quotation marks, and alteration omitted); *see also United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960) ("The federal policy of settling labor disputes by

arbitration would be undermined if courts had the final say on the merits of the awards."). The scope of judicial review of arbitration awards, therefore, is "among the narrowest known to the law." *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978) (per curiam) (internal quotation marks omitted).

A court reviewing a labor arbitration award is limited to "determin[ing] only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). In doing his job, the arbitrator "is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. . . . [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement." *Enterprise Wheel*, 363 U.S. at 597. Thus, "as long as the arbitrator is even *arguably* construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (emphasis added). While an award that ignores the plain language of the collective bargaining agreement cannot be said to draw its essence from that agreement, *see Mountaineer Gas*, 76 F.3d at 608, "a court should not reject an award on the ground that the arbitrator misread the contract," *Misco*, 484 U.S. at 38.

B.

Media General contends that the arbitration award in this case did not draw its essence from the collective bargaining agreement. Media General's primary argument is that the arbitrator concluded (either explicitly or implicitly) that Mastropaolo's conduct amounted to gross misconduct, but the arbitrator, apparently swayed by personal sympathy for Mastropaolo, nonetheless refused to uphold the termination. Because the collective bargaining agreement expressly provides that gross misconduct *shall* constitute just and sufficient cause for discharge, Media General contends that the arbitrator violated the plain language of the collective bargaining agreement when he refused to uphold the termination. *See, e.g., Mountaineer Gas*, 76 F.3d at 610 (vacating arbitration award because "the arbitrator blatantly ignored the unambiguous language of the [collective bargaining agreement]

and fashioned a modified penalty that appealed to his own notions of right and wrong"); *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 604 (5th Cir. 1989) ("If a collective bargaining agreement defines 'proper cause' to include a non-exhaustive list of offenses, an arbitrator cannot ignore the natural consequence of his finding that a listed offense was committed.").

As the district court explained, the opinion issued by the arbitrator in this case is "not a model of clarity." J.A. 545. The opinion is susceptible of the construction urged by Media General—that the arbitrator concluded that Mastropaolo's conduct amounted to gross misconduct, but still refused to uphold the termination. As noted above, Media General insists that such a construction of the opinion requires that the award be vacated. Mastropaolo, however, contends that such a construction would not preclude enforcement of the award. *See, e.g.*, *Misco*, 484 U.S. at 41 ("Normally, an arbitrator is authorized to disagree with the sanction imposed for employee misconduct."); *Enterprise Wheel*, 363 U.S. at 597 ("When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies.").

We need, not, however, decide whether it would have been proper for the arbitrator to order reinstatement if the arbitrator concluded that Mastropaolo's actions amounted to gross misconduct. As we explain below, the arbitration opinion reasonably may be read in a way that shows the award drew its essence from the collective bargaining agreement. And because the award may be so read, we must reject the reading urged by Media General. *See Enterprise Wheel*, 363 U.S. at 598 ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."); *ANR Advance Transp. Co. v. International Bhd of Teamsters*, 153 F.3d 774, 778 (7th Cir. 1998) ("We resolve any reasonable doubt about whether an award draws its essence from the collective bargaining agreement in favor of enforcing the award." (internal quotation marks and alteration omitted)); *Industrial Mut. Ass'n v. Amalgamated Workers, Local Union No. 383*, 725 F.2d 406, 410 (6th Cir. 1984) ("The Supreme Court has made it clear . . . that reviewing courts are not to

vacate awards merely because an arbitrator's reasoning could be interpreted in several ways, one of which would lead to the conclusion that the award does not draw its essence from the contract.").

In his order, the arbitrator stated that "[o]ne of the most important tenets of disciplinary proceedings is that the Arbitrator must look to the charge stated by the Company at the time it acted to discharge, and that there can be no significant additions or cha[n]ges to the accusation which was said by it to be why it acted as it did." J.A. 407-08. The arbitrator then discussed the significance of Media General's June 1 letter to Mastropaolo (which explained that she had been terminated because she pleaded guilty to a felony) in light of the requirement in the collective bargaining agreement that Media General inform employees of the reason for dismissal. The arbitrator found it significant that Media General had deleted from the first draft of the June 1 letter any reference to Mastropaolo's conduct at the festival and had made a specific decision to rely solely on the felony guilty plea to justify the discharge, noting that "the narrow charge was [not] the result of a mistake or other sloppy arrangements." J.A. 408. The arbitrator therefore refused to consider Media General's claims that it fired Mastropaolo because of the serious nature of her conduct, regardless of whether the crime to which she pled was treated as a felony or a misdemeanor, concluding "that would inject reasons for the discharge that were not stated at the time it was imposed." J.A. 411.

The arbitrator concluded that while the statement in the letter that Mastropaolo pleaded guilty to a felony was "formally accurate," the statement "in reality [was] not substantially descriptive of all that happened here," J.A. 411, given that the felony charge was later reduced to a misdemeanor. As the arbitrator explained, Media General made its decision to terminate Mastropaolo "almost two months before [Mastropaolo's] ultimate conviction of the reduced counts of two misdemeanors and not of a felony and before the criminal process had ended." J.A. 408. Thus, the arbitrator determined that whether or not the underlying conduct could be considered gross misconduct was irrelevant; instead, the only question the arbitrator considered was whether pleading guilty to a felony (the reason given in the letter) was just and sufficient cause for Mastropaolo's termination.

The arbitrator concluded that the "just and sufficient cause" language used in the collective bargaining agreement must be interpreted

to mean more than "just cause." That is, the arbitrator determined that by including "sufficient" in the agreement,

> [t]he parties simply must have had some thought that they would impose some greater duty on the Company than if the parties' negotiated Agreement said only that there must be "just cause." The phrase "and sufficient" thus must be seen here as imposing a heavier burden on Management than would a mere "just cause" standard. The best the Arbitrator can do, therefore, is to read "and sufficient" as adding a requirement that the "just cause" be weighty, grave, and serious, to some degree at least over what would be included in "just cause," standing alone.

J.A. 410.

As we read the opinion, the arbitrator concluded that pleading guilty to a felony was not just *and* sufficient cause, at least in this case. Given the executive editor's statement that Mastropaolo might not lose her job if she pleaded guilty to a misdemeanor, and the company's sole reliance on the felony guilty plea when it explained why she was terminated, the arbitrator concluded that Mastropaolo's guilty plea to a charge that was only briefly a felony was not just and sufficient cause, since the felony charge was reduced to a misdemeanor charge shortly after the guilty plea, an outcome that Media General knew was possible when it fired her. Thus, even if stealing and misusing a press pass should be considered gross misconduct under the collective bargaining agreement, that would not justify Mastropaolo's termination, since Media General stated it fired her because she pleaded guilty to a felony, not because of the nature of the underlying conduct.

The arbitration award, therefore, flowed from the arbitrator's interpretation of two provisions of the collective bargaining agreement—the requirement that Media General give notice of its reason for termination and the requirement that the termination requires just *and* sufficient cause. While we might not agree with the arbitrator's interpretation of these provisions, the interpretation is rational and plausible, in that it attempts to give effect to every term of the agreement. *See Bruce Hardwood Floors v. UBC, Southern Council of Indus.*

*Workers*, 103 F.3d 449, 451-52 (5th Cir. 1997) ("In applying the essence test, we have stated that an arbitration award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement. The award must, in some logical way, be derived from the wording or purpose of the contract." (internal quotation marks and alterations omitted)).

To be sure, the arbitrator determined that the termination was not justified, at least in part, by considering certain mitigating factors, such as Mastropaolo's length of service with the newspaper and the arbitrator's belief that Mastropaolo would not engage in similar conduct again. But the arbitrator's construction of the collective bargaining agreement made irrelevant the question of whether stealing is gross misconduct *per se*, and instead required the arbitrator to determine whether the reason given by Media General for the termination amounted to just *and* sufficient cause. Nothing in the collective bargaining agreement rendered improper the arbitrator's consideration of such mitigating factors when answering what the arbitrator viewed as the dispositive question—whether pleading "guilty to a preliminary charge of felony, later reduced to a misdemeanor, constitutes just and sufficient cause for [Mastropaolo's] discharge." J.A. 413.

Because the arbitration award reasonably can be interpreted in a way that draws its essence from the collective bargaining agreement, we must accept that interpretation of the award over that urged by Media General.\* *See Enterprise Wheel*, 363 U.S. at 597; *ANR Advance Transp. Co.*, 153 F.3d at 778. Therefore, even if the arbitrator's interpretation of the agreement was wrong, we must defer to it. *See Misco*, 484 U.S. at 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."); *Upshur Coals Corp. v. United Mine Workers*, 933 F.2d 225, 230 (4th Cir. 1991) ("We do not and need not decide whether any of these analyses constitute the best

---

\*This conclusion makes it unnecessary to consider Media General's alternative argument that if the arbitrator did not find Mastropaolo's conduct to be gross misconduct, then that failure was "clear arbitral error" that requires vacating of the arbitration award. Brief of Appellant at 33.

or most accurate reading of the contract. We hold only that they are plausible readings of the agreement. . . . Consequently, under our deferential standard of review, we cannot say that the arbitration award failed to draw its essence from the agreement.").

## III.

In her cross-appeal, Mastropaolo contends that the district court erred by denying her request for an award of attorney's fees incurred in her action to enforce the arbitration award. We disagree.

Although an award of attorney's fees is not specifically authorized by the Labor Management Relations Act, fees may be awarded against a party who unjustifiably refuses to abide by an arbitrator's award. *See United Food & Commercial Workers v. Marval Poultry Co.*, 876 F.2d 346, 350 (4th Cir. 1989). "Where a challenge goes to the fundamental issues of arbitrability or of whether an arbitration award draws its essence from the contract, the standard for assessing its justification is . . . whether it has any arguable basis in law." *Id.* at 351 (internal quotation marks omitted). Under this standard, such a challenge is justified unless it "literally [has] no reasonably arguable legal support." *Id.*

We agree with the district court that Media General's challenge went to the question of whether the arbitration award drew its essence from the collective bargaining agreement, and that, in view of the "confusing language used in the arbitrator's opinion, it cannot be said that Media General's action literally had no legal support." J.A. 552 (internal quotation marks and alteration omitted). Accordingly, Media General's challenge to the award was sufficiently justified, and Mastropaolo's request for attorney's fees was properly denied. *Cf. Westvaco Corp. v. United Paperworkers Int'l Union*, 171 F.3d 971, 978 n.3 (4th Cir. 1999) (concluding that arbitration award should be enforced, but denying employee's request for attorney's fees because the employer "did not challenge the arbitration award 'without justification'").

## IV.

If this court were deciding the propriety of Media General's termination of Mastropaolo in the first instance, we likely would have

interpreted the collective bargaining agreement quite differently than did the arbitrator, and we likely would have concluded that Mastropaolo's conduct amounted to gross misconduct warranting discharge. But this court is not free "to delve into the merits of an arbitration award," *American Postal Workers Union*, 204 F.3d at 527, and we may not refuse to enforce an arbitration award simply because we believe the arbitrator's decision was wrong, *see Misco*, 484 U.S. at 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."). Under the highly deferential standard of review applicable in this case, we are constrained to conclude that the arbitrator's award drew its essence from the collective bargaining agreement and that the award must therefore be enforced. But because Media General's challenge to the award was sufficiently justified, Mastropaolo is not entitled to an award of attorney's fees. Accordingly, the decision of the district court is hereby affirmed.

*AFFIRMED*

GREGORY, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's recitation of the standard of review that governs this case. *See ante* at 5-6. "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision. It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Major League Baseball Players Assoc. v. Garvey*, 532 U.S. 504, 509 (2001) (quotations and citations omitted). The majority's application of this standard, however, is mystifying. Here, the arbitrator was not even "arguably" interpreting the contract. To be sure, the arbitrator's decision purports to interpret the contract, and the decision certainly references the contract. But that cannot be enough, otherwise any review would be effectively foreclosed so long as the arbitrator did not openly flout the contract. Our review is not *that* narrow.[1]

---

[1] I concur in the majority's resolution of the cross-appeal. *Ante* at 11. The district court did not err in denying Ms. Mastropaolo's request for an award of attorney's fees. *See United Food and Comm. Workers v. Marval Poultry Co.*, 876 F.2d 346, 350 (4th Cir. 1989).

I.

The proper resolution of this case depends on an understanding of the basic mechanics of the contract and the criminal plea process. Under the contract, "gross misconduct" *is* "just and sufficient cause" for dismissal. There is no room for additional requirements. Other circumstances may or may not amount to "just and sufficient cause," but "gross misconduct" always does. The termination clause states:

> There shall be no dismissals except for just and sufficient cause, which shall include but not be confined to: reduction of force, willful neglect of duty, gross misconduct and incompetency.

J.A. 300. If "just and sufficient cause" exists, then Media General has a contractual right to terminate employment. Whether the arbitrator thinks termination is the just result—in any sense that untethers the term from "gross misconduct"—is irrelevant.

Regarding the plea process, when an individual pleads guilty to a felony, he or she is necessarily admitting to conduct that would support a felony conviction.[2] *Jones v. Commonwealth*, 513 S.E.2d 431, 510 (Va. 1999) ("A guilty plea normally consists of both a waiver of constitutional rights and an admission of guilt. Ordinarily, a judgment of conviction resting on a plea of guilty is justified by the defendant's admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind. The plea usually subsumes both elements . . . even though there is no separate, express admission by the defendant that he committed the particular acts claimed to constitute the crime charged in the indictment."). Ms.

---

[2]A familiar example of this acknowledgment of factual guilt is that portion of the plea colloquy when the judge asks the defendant: "Are you pleading guilty because you are guilty?" Va. Sup. Ct. R. 3A:8; *id.* app. Form 6; *see also* Fed. R. Crim. Pro. 11(f). If the defendant does not answer in the affirmative, the judge will typically refuse to enter the plea. In certain cases, a defendant may plead guilty but not admit to factual guilt. Such a plea is known as an *Alford* plea. *North Carolina v. Alford*, 400 U.S. 25 (1970); *Jones*, 513 S.E.2d at 435. There is no indication that Ms. Mastropaolo entered an *Alford* plea.

Mastropaolo pleaded guilty to a felony. She was convicted of a felony. The conviction was later reduced to a misdemeanor. But she has never asserted that her conduct did not support a felony conviction. By pleading guilty to a felony, she has clearly admitted that she engaged in felonious conduct. The later reduction in the conviction was merely a determination that Ms. Mastropaolo was not justly deserving of a felony conviction or the criminal punishment that would follow from such a conviction.

## II.

With this background in mind, I turn to the letter of June 1, 1999, in which Media General terminated Ms. Mastropaolo's employment. The asserted reason for her dismissal was her "guilty plea to a felony charge[.]" The majority is correct that the letter did not mention the specific conduct underlying the criminal charges. It is readily apparent why this is so. Rather than accuse Ms. Mastropalo of specific conduct which may or may not turn out to be true in every significant detail, Media General made the blanket assertion that *all* felony conduct is "gross misconduct" as defined by the contract. That way, disputes regarding the minutiae of what did or did not happen were avoided. Media General simply tied its decision to Ms. Mastropaolo's admission of guilt.

As a result of Media General's reliance on the felony plea, only one issue remained for the arbitrator: Does a felony plea (and the attendant admission of guilt) constitute "gross misconduct?" I suppose reasonable people might disagree on that question. But everyone must agree that if the answer to that question is yes, then the arbitrator's decision is flatly inconsistent with the contract. All one need do is read the contract to see that no other interpretation is even plausible: "[J]ust and sufficient cause . . . shall include . . . gross misconduct." The arbitrator, whose view is the one that matters, directly answered the question. He stated: "[E]ven though grievant's plea of guilty to a felony was formally accurate as a charge of 'gross misconduct' as of June 1, it cannot rise in light of all circumstances of this case to 'just and sufficient cause' for grievant's discharge." J.A. 411. This statement is the only significant mention of "gross misconduct" in his opinion, and should have ended the arbitration, for there was nothing left for the arbitrator to do but give effect to the plain language of the

contract. *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 38 (1987) ("The arbitrator may not ignore the plain language of the contract[.]"); *Delta Queen Steamboat Co. v. District 2, Marine Engineers Assoc.*, 889 F.2d 599, 604 (5th Cir. 1989) ("If a collective bargaining agreement defines 'proper cause' to include a nonexhaustive list of offenses, an arbitrator cannot ignore the natural consequences of his finding that a listed offense was committed."); *Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l Union*, 76 F.3d 606, 610 (4th Cir. 1996).

The arbitrator's analysis, however, went far beyond his finding of "gross misconduct." The arbitrator's stated reason for not finding in favor of Media General was that "in light of all the circumstances" there was not "just and sufficient cause" for Ms. Mastropaolo's discharge. It was at this point—in the slip from "gross misconduct" to "just and sufficient cause"—that the arbitrator let himself loose from the contract. The arbitrator's reasoning, although textually hooked to the contract, inserted his own notions of "industrial justice" into the case. *Garvey*, 532 U.S. at 509. He accomplished this by interpreting "just and sufficient cause" to require more than "gross misconduct." So much is apparent from his conclusion that the gross misconduct did not "rise to the level" of just and sufficient cause. As noted at the outset, this was an impermissible interpretation. In fact, it was not an interpretation at all. *United States Postal Service v. American Postal Workers Union*, 204 F.3d 523, 525 (4th Cir. 2000) ("Because the arbitrator completely rewrote the collective bargaining agreement . . ., we affirm the district court's judgment [vacating the award].").

The arbitrator made several findings to support his conclusion that Ms. Mastropaolo did not deserve the punishment of dismissal. In addition to the later reduction of Ms. Mastropaolo's conviction, the arbitrator considered other factors:

> The upshot of all that was that it counted in the Arbitrator's assessment of all evidence and arguments here that grievant had twenty-five years of excellent service for this newspaper, that this incident was totally out of character with that long and excellent service, that credible evidence supported the view that grievant's depression and impulse-control problems very likely had caused this and that those prob-

> lems had been dealt with satisfactorily over the twelve years of her past psychiatric and medication treatment by her psychiatrist, so that, with her present treatment regimen, it was not at all likely to occur again, and that the evidence, aside from conjecture, of significant harm to the Newspaper's reputation in the public eye was not sufficient to prohibit her returning to work, especially since there was no newspaper coverage of the event and actual knowledge of it by only a relatively few, only one of whom had drawn any negative conclusions from it about the Newspaper.

J.A. 412. These factors would be highly relevant to the question of whether there is "just and sufficient cause"—as defined independent of "gross misconduct"—for dismissal, but the arbitrator did not even suggest that they were relevant to the issue of "gross misconduct."

If the majority is correct that the arbitrator refused to consider "the serious nature of [Mastropaolo's] conduct, regardless of whether the crime to which she pled was treated as a felony or a misdemeanor," *ante* at 8, then on what basis did the arbitrator consider the mitigating evidence, which clearly was part of the conduct? I think it is apparent that he did consider Ms. Mastropaolo's conduct and the felonious nature of the conduct. He just refused to acknowledge the natural implication of the felony plea, in order to get to the issue of "just and sufficient cause." If the felony plea did not constitute gross misconduct (and the arbitrator clearly stated that it did), and that was the *only* basis on which Ms. Mastropaolo's dismissal rested, then how did the arbitrator conclude that Ms. Mastropaolo should receive *any* sanction? Again, it is clear that the arbitrator did consider the underlying conduct, he just did so in an impermissible manner. That is, he considered the conduct as an excuse to shift the issue from "gross misconduct" to "just and sufficient cause." At the same time, he admitted that the conduct led to a felony plea, and that such a plea was an admission of "gross misconduct."

As a non-exclusive list of grounds for termination, there is arguably (even probably) a catch-all category that would permit the definition given to "just and sufficient cause" by the arbitrator. That is, if Media General's reason for dismissal did not fall within one of the enumerated examples of "just and sufficient cause," the company

might have argued that it nevertheless had "just and sufficient cause" for termination. But Media General was not relying on any catch-all category, so any reliance on a definition of "just and sufficient cause" without regard to "gross misconduct" was simply irrelevant. Not merely unreasonable, but irrelevant, and consequently demonstrably at odds with the language of the contract.

The majority accepts the arbitrator's view that the "dispositive question," *ante* at 10, was whether the plea of guilty and all the sur-rounding circumstances fell within his free-standing interpretation "just and sufficient cause" for dismissal. That was patently not the dispositive question—any more than whether Ms. Mastropaolo quali-fied for dismissal under one of the other enumerated grounds, such as "incompetency" or "reduction of force," was the dispositive question. The only issue was whether a felony plea constituted "gross miscon-duct." The majority describes the sequence of the arbitrator's attempt to reason away from that issue, but fails to explain how that reasoning is plausible. The arbitrator's ultimate finding was based on an answer to a question not put to him. His reasoning defies logic, and is non-responsive to boot. As a result, Media General did not receive that for which it had bargained—an arbitrator that would base his decision on an interpretation of the contract. *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 599 (1960).

III.

This case is strikingly similar to *Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l Union*, 76 F.3d 606 (4th Cir. 1996). In that case, the collective bargaining agreement limited the employ-er's right to discharge to "proper cause." *Id.* at 608. The company's drug policy, which was incorporated into the agreement, provided for dismissal of employees who tested positive for drugs. *Id.* at 609. A dismissed employee, who tested positive for drugs, filed a grievance, which was sent to arbitration. The arbitrator found that the employee had tested positive, but refused to find in favor of the employer. The arbitrator cited the employee's 15 years of service to the company and the harshness of the drug policy. *Id.* at 609-10. We vacated the arbi-tration award, stating that the arbitrator lacked the authority to ignore the language of the contract. *Id.* We specifically rejected the employ-ee's reliance on the "proper cause" standard contained in the contract,

stating: "[T]he words 'proper cause' of the [collective bargaining agreement] cannot be the loophole through which the arbitrator bypasses the Drug Policy's mandatory language to implement his own brand of industrial justice." *Id.* The same result should obtain here. We should recognize the arbitrator's reliance on "just and sufficient cause" for what it is—an attempt to bypass a finding of "gross misconduct" in order to pack the decision with his own notions of right and wrong.

## IV.

An arbitrator is obliged to apply the collective bargaining agreement as written. "When an arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Enterprise Wheel*, 363 U.S. at 597.

I respectfully concur in part and dissent in part.