**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PPG Industries, Incorporated,

*Plaintiff-Appellee,*

v.

International Chemical Workers
Union Council of the United
Food and Commercial Workers;
International Chemical Workers
Union Council of The United
Food and Commercial Workers,
Local Union No. 45C,

*Defendants-Appellants.*

No. 08-2180

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Senior District Judge.
(5:07-cv-00085-FPS)

Argued: September 30, 2009

Decided: November 20, 2009

Before MOTZ and DUNCAN, Circuit Judges, and
Cameron McGowan CURRIE, United States District Judge
for the District of South Carolina, sitting by designation.

Reversed and remanded by published opinion. Judge Motz
wrote the opinion, in which Judge Duncan and Judge Currie
joined.

**COUNSEL**

**ARGUED**: August Randall Vehar, ICWUC/UFCW LEGAL DEPARTMENT, Akron, Ohio, for Appellants. C. David Morrison, STEPTOE & JOHNSON, LLP, Clarksburg, West Virginia, for Appellee. **ON BRIEF:** Robert W. Lowrey, UFCW Assistant General Counsel, ICWUC/UFCW LEGAL DEPARTMENT, Akron, Ohio; Tim Cogan, CASSIDY, MYERS, COGAN & VOEGELIN, LC, Wheeling, West Virginia, for Appellants. Carolyn A. Wade, Jill Oliverio Florio, STEPTOE & JOHNSON, LLP, Clarksburg, West Virginia, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

A reviewing court must defer to an arbitrator's construction of a contract even when the court believes that the arbitrator construed the contract incorrectly. In this case, the district court vacated the arbitration award, concluding that the arbitrator exceeded his authority by adding a term to the underlying contract. We conclude, however, that even if the arbitrator erred, he acted within the scope of his authority under the contract. Accordingly, we must reverse the judgment of the district court and remand with instructions to enforce the arbitration award.

I.

The contract at issue, a collective bargaining agreement ("CBA"), governed labor relations between PPG Industries ("Company") and certain union employees at the Company's Natrium, West Virginia plant during 2005. These employees belonged to the International Chemical Workers Union Council of the United Food and Commercial Workers and the

International Chemical Workers Union Council of the United Food and Commercial Workers, Local Union No. 45C ("Union").

The CBA expressly provides that "grievances involving alleged violations with respect to the application or interpretation of the terms of this agreement may be submitted by either party to arbitration." It further provides that "[t]he Arbitrator shall have no authority to add to, take from, change or modify any of the terms of this Agreement nor shall he have any authority in the making of a new agreement."

The CBA incorporates the terms of a company-wide bonus plan, the Chlor-Alkali & Derivatives Variable Pay Plan ("Bonus Plan"). The parties agree that the CBA mandatory arbitration provision quoted above governs disputes arising under the Bonus Plan.

The Bonus Plan states that an employee becomes eligible to receive a bonus if the employee:

> (1) has been Actively Employed for 1,040 or more hours during the Plan Year; and
>
> (2)(a) is Actively Employed on the last workday of the Plan Year; or on approved leave of absence or layoff; or
>
> (b) whose termination during the Plan Year was an Eligible Termination.

The CBA defines "Actively Employed" in two sentences:

> "Actively Employed" means actively at work; on vacation; or on FMLA or Military leave of absence. "Actively Employed" does not include overtime hours, leaves of absence, other than FMLA and/or Military, or layoffs.

Union members at the Natrium plant went on strike from September 2005 until February 2006. After resolution of the strike and agreement on a new CBA, the Company refused to pay the bonuses set forth in the Bonus Plan to striking employees—even those actively employed for more than 1040 hours during 2005. Seeking payment of these bonuses, the Union filed a grievance under the CBA. The matter proceeded to arbitration.

Following a hearing at which both sides presented evidence and arguments, the arbitrator issued his order and opinion awarding relief to the Union. After setting forth the parties' respective arguments, the arbitrator noted that the "strike extending through the last day of the year" presented a situation "never discussed, or in all probability contemplated, by the parties during meetings regarding [the Bonus Plan]." The arbitrator rejected the Union's claim that the Company unlawfully retaliated in denying the strikers benefits under the Bonus Plan. The arbitrator explained that although he could "understand the Union's view of [the Company's] motivation," the Company had "made a plausible argument" for its decision and, if he viewed the matter "without full consideration of all the surrounding circumstances[,] [he] would be inclined to accept the Company's claim of ineligibility."[1]

The arbitrator did not explain precisely what he meant by "all the surrounding circumstances," but he did immediately follow this observation with the statement that he was "fully aware of the limitations" that the CBA arbitration provision imposed on him and the Supreme Court's requirement that any arbitration award "draw[ ] its essence from the collective bargaining agreement." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). The arbitrator then quoted several arbitration decisions that set forth various

---

[1]The Union continues to pursue this claim, but only as a rationale for reinstating the arbitration award. Because we order reinstatement of the award on other grounds, we do not reach the retaliation argument.

rules of contract construction. These include the rule that "if the terms of an agreement 'unambiguously resolve the point at issue, the arbitrator has no choice but to apply them as written,'" and the rule that arbitrators should attempt to determine, "from the instrument as a whole, the true intent of the parties."

The arbitrator considered evidence submitted by both parties that during a series of meetings held in 1995, employees asked questions about the Bonus Plan. In response to questions about the definition of "active employment," a Company official had stated that employees were *either* "employed" *or* "terminated," suggesting that an employee not "terminated" was "actively employed" for purposes of the Bonus Plan. The arbitrator noted that the Company had drafted the language of the Bonus Plan, and that any ambiguity in the term "actively employed" should be "construed against the drafter" (internal quotation marks omitted) (quoting another arbitration decision).

The arbitrator next addressed the argument of the Company based on the axiom that the expression of one thing implies the exclusion of others. Specifically, the Company contended that because the Bonus Plan enumerates four groups of active employees, but does not name strikers, it thereby excludes strikers from the ranks of the "actively employed" and so from eligibility for bonuses. The arbitrator found that "[w]hile the principle of exclusion is a solid one . . . there is a dilemma here with the wording" of the Bonus Plan. That is, the arbitrator noted, the Bonus Plan also contains another list of groups of employees—those expressly *not within* the category "actively employed"—and this list too does not name strikers. The arbitrator observed that the presence of the two lists "gives rise to the question to which list does the exclusion rule apply? If it is the latter list then the grievants are not ineligible [for bonuses]."

To resolve the "dilemma" created by the two contractual lists addressing active employment, the arbitrator referred

again to the Company's comments at its 1995 meetings with the Union. The arbitrator concluded that "the explanations given to the Union in the 1995 discussions were, if not misleading, lacking in a satisfactory or clear definition of" the term "actively employed" and therefore unclear as to eligibility for benefits under the Bonus Plan. Accordingly, the arbitrator found that the strikers, who were otherwise entitled to bonuses "[u]nder the language of the [CBA] and the [Bonus] Plan . . . did not forfeit that entitlement by going on strike at the termination of their Labor Agreement and continuing on strike through 12/31/2005."

The Company contested the arbitration award in the district court. On cross-motions for summary judgment, the court vacated the award, finding that the arbitrator had exceeded his authority. The court reasoned that "nothing in the [Bonus Plan], the CBA, or the parties' 1995 discussions concerning the [Bonus Plan] indicates that the parties intended to include or exclude, or even considered including or excluding, striking employees as falling within the meaning of 'Actively Employed.'" For this reason, the court believed that the arbitrator had "effectively changed the term 'Actively Employed' by adding 'on strike' to its list of inclusions, in violation of the restrictions imposed upon his authority by the CBA."

The Union timely filed this appeal.

## II.

Whether an arbitrator acts within the scope of his authority presents a question of law, and so we review the judgment of the district court *de novo*. *Island Creek Coal Co. v. Dist. 28, United Mine Workers of Am.*, 29 F.3d 126, 129 (4th Cir. 1994).

"[J]udicial review of arbitration awards is . . . 'among the narrowest known to the law.'" *U.S. Postal Serv. v. Am. Postal Workers Union*, 204 F.3d 523, 527 (4th Cir. 2000) (quoting

*Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978)). Indeed, the Supreme Court has recently explained that "[j]udicial review of a labor-arbitration decision" is not merely limited but "very limited." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam). A court must "determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996).

Of course, the arbitrator cannot "ignore the plain language of the contract" to impose his "own notions of industrial justice." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). However, "mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *Enter. Wheel*, 363 U.S. at 598. The Court has explained that since arbitrators need not give *any* rationale for an arbitration award, requiring their opinions to be "free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions." *Id.* Therefore, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38.[2]

---

[2]The Company acknowledges most of these well-established principles. A notable exception is the Company's heavy reliance on *Wyandot, Inc. v. Local 227, United Food & Commercial Workers Union*, 205 F.3d 922, 929 (6th Cir. 2000), to establish some limitations on the arbitrator's role. The Company fails to recognize that the Sixth Circuit itself has recently held that the Supreme Court's holdings in *Misco* and *Garvey* do not permit these limitations and so overruled the approach followed in *Wyandot. See Mich. Family Res. v. Serv. Employees Int'l Union Local 517M*, 475 F.3d 746, 751-53 (6th Cir. 2007) (en banc).

### III.

To circumvent the mountain of authority holding that courts cannot second-guess an arbitrator's construction of a CBA, the Company principally contends that the "arbitrator ignored plain contract language," added "a new term to the agreement," and so "strayed from his proper role." Brief of Appellee at 12, 23, 36.

Given the two-sentence CBA definition of "actively employed" and the failure of the CBA to address strikers in either sentence, we cannot conclude that the arbitrator ignored the plain language of the CBA. *Yuasa, Inc. v. Int'l Union of Electronic, Electrical, Salaried, Mach. & Furniture Workers, Local 175*, 224 F.3d 316 (4th Cir. 2000), is instructive here. There, as here, the the CBA did not address certain issues, which therefore "had to be addressed through interpretation" by the arbitrator. *Id.* at 323. Also as in *Yuasa*, the arbitrator's decision was consistent with the parties' general intent as manifested in the agreement itself and, in any event, not inconsistent with any clearly expressed limitation. *Id.*

The Company's arguments simply constitute an attack on the *correctness* of the arbitrator's decision. A court has no warrant to determine the correctness of the arbitrator's award. If an arbitrator "even arguably" construes a CBA, a court must uphold the resulting award. *Misco*, 484 U.S. at 38.

Certainly, in the case at hand, the arbitrator construed the CBA. At the outset of his opinion, the arbitrator explicitly acknowledged his limited mandate under the CBA and the Supreme Court's admonition in *Enterprise Wheel* that he draw the essence of his award from the CBA. The arbitrator then dedicated virtually his entire opinion to interpreting the phrase "actively employed" in the CBA. In doing so, he repeatedly relied on precedents interpreting the very same phrase and on the rules of contract construction.

Accordingly, the arbitration award at issue here stands in stark contrast to the few modern instances in which we have held that an arbitrator crossed the line from construing a contract to imposing his own notions of fairness. *Cf. Postal Serv.*, 204 F.3d at 528 (rejecting an arbitrator's award that "contravene[d] the unambiguous language of" the contract); *Champion Int'l Corp. v. United Paperworkers Int'l Union*, 168 F.3d 725, 731 (4th Cir. 1999) (rejecting an arbitrator's award because it was based on the wrong contract); *Mountaineer Gas*, 76 F.3d at 610 (rejecting an arbitrator's award that "blatantly ignored the unambiguous language" of the company's policy and instead "fashion[ed] an entire new remedy and infuse[ed] his personal feelings and sense of fairness into the award"); *Island Creek Coal Co.*, 29 F.3d at 130–31 (rejecting an arbitrator's award for punitive damages when the underlying agreement did not authorize punitive damages).

For these reasons, the Company's contention that the "arbitrator ignored plain contract language" and added "a term to the CBA" must fail.

## IV.

The Company's only remaining argument—that the arbitrator erred in using extrinsic evidence (i.e. evidence as to the 1995 meetings) to construe "unambiguous language" in the CBA—also fails.[3] This is so because the arbitrator found the terms of the CBA *ambiguous*, and this court cannot second-guess that judgment.

---

[3]Tellingly, the Company itself has recognized facial ambiguity in the CBA and Bonus Plan. Thus, the Company argues that the plain language of these documents requires an employee to be "Actively Employed" "on the last work day" of a year to earn the bonus, but contends that it has "never taken" the "ridiculous position" of denying benefits under the Bonus Plan "to an employee who happened to be scheduled off of work" when December 31 falls on a Saturday. Brief of Appellee at 16 n.8. Moreover, in making this argument, the Company relies on "the 1995 discussions between the Company and the Union," which it contends the arbitrator improperly considered. *Id.*

The "basic objective" of a reviewing court in the arbitration context is "to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms, and according to the intentions of the parties." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947 (1995) (citations and internal quotation marks omitted). Here, the parties expressly agreed in the CBA that the arbitrator could adjudicate "grievances involving alleged violations with respect to the *application or interpretation* of the terms of [the CBA]" (emphasis added). Because determining whether the terms of a contract are ambiguous is an exercise in "interpretation," the parties agreed in the CBA that the arbitrator would determine the ambiguity *vel non* of its terms. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003) (noting that when a contract contains such "sweeping language concerning the scope of the questions committed to arbitration, . . . matter[s] of contract interpretation should be for the arbitrator, not the courts, to decide"). Pursuant to this authority (and consistent with the record before him), the arbitrator found the terms of the CBA ambiguous.

In light of that finding, the arbitrator could properly consider the 1995 meetings in order to resolve the ambiguity. *See CSX Transp., Inc. v. United Transp. Union*, 29 F.3d 931, 936 (4th Cir. 1994) ("If the parties' written agreement is ambiguous or silent regarding the parties' intent, the arbitrator may use past practices and bargaining history to 'fill a gap' in the written contract.").

## V.

Accordingly, we reverse the judgment of the district court and remand the case for entry of a judgment enforcing the arbitration award.

*REVERSED AND REMANDED*