**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-1766**

INTERMET CORPORATION,

Petitioner - Appellee,

v.

UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING,
ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL
UNION; UNITED STEEL WORKERS OF AMERICA LOCAL UNION 8270,

Respondents - Appellants.

Appeal from the United States District Court for the Western
District of Virginia, at Lynchburg.  Norman K. Moon, Senior
District Judge.  (6:10-mc-00007-NKM)

Argued: March 23, 2012                  Decided: April 5, 2012

Before WILKINSON, MOTZ, and DUNCAN, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion.

**ARGUED:** Amanda Marie Fisher, UNITED STEELWORKERS OF AMERICA,
Pittsburgh, Pennsylvania, for Appellants.  Christopher M.
Michalik, MCGUIREWOODS, LLP, Richmond, Virginia, for Appellee.
**ON BRIEF:** Melissa Wolf Riley, MCGUIREWOODS, LLP,
Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Two unions appeal from a district court's grant of summary judgment vacating an arbitrator's award under a collective bargaining agreement. Because the arbitrator acted within the scope of his powers under the collective bargaining agreement, we reverse the judgment of the district court and remand the case for entry of an order enforcing the arbitration award.

I.

Intermet Corp. ("Intermet") declared bankruptcy in July 2009 and closed its Archer Creek foundry in Campbell County, Virginia in December 2009. In doing so, it terminated the employment of roughly 170 persons as of December 26, 2009. Intermet refused to pay vacation benefits assertedly due to the employees for the time they worked in 2009 because it took the position that such benefits were not due under the collective bargaining agreement ("CBA") unless the workers were employed on December 31, 2009.

Two unions, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and the United Steel Workers of America Local Union 8270, represented workers at the foundry negotiating the CBA. The unions filed a class action grievance pursuant to the CBA, and submitted the dispute for arbitration.

2

Article 11 of the CBA governs the accrual and distribution of vacation benefits. Section 5 of Article 11, upon which Intermet chiefly relies, provides that "[t]o be eligible for vacation benefits during any calendar year, an employee must be actively employed on December 31 of the preceding year." Article 11 contains several other provisions which, in some circumstances, allow an employee to claim vacation benefits even if not employed on December 31 of the preceding year.

The arbitrator concluded that Intermet's refusal to pay vacation benefits earned in 2009 violated Article 11 of the CBA. The arbitrator reasoned that, in negotiating the CBA, the parties had not contemplated how vacation benefits would be apportioned in the event of plant closure and that Section 5 did not apply to the circumstance of a plant closure. Moreover, the arbitrator found that the vacation benefits were "a bargained for benefit" and that "according to the . . . language of the Parties Agreement, this entitlement had already been earned."

Intermet brought this action in district court seeking to vacate the arbitrator's award; the unions counterclaimed to enforce the award. After the parties filed cross-motions for summary judgment, the district court ruled in favor of Intermet, vacating the award. The court found that the CBA required a person to be employed on December 31, 2009 to be entitled to

3

vacation pay accrued by virtue of working during that year. The unions noted a timely appeal.

We review the judgment of the district court de novo. Parsons v. Power Mountain Coal Co., 604 F.3d 177, 182 (4th Cir. 2010).

II.

"Judicial review of arbitration awards is among the narrowest known to the law." PPG Indus. v. Int'l Chem. Workers, 587 F.3d 648, 652 (4th Cir. 2009) (internal alterations and quotation marks omitted). A court must "determine only whether the arbitrator did his job -- not whether he did it well, correctly, or reasonably, but simply whether he did it." Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996).

An arbitrator's award may be vacated only if "it violates clearly established public policy, fails to draw its essence from the collective bargaining agreement, or reflects merely the arbitrator's personal notions of right and wrong." Yuasa, Inc. v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, 224 F.3d 316, 321 (4th Cir. 2000) (internal quotation marks omitted). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court cannot overturn the arbitrator's

4

award even if the court "is convinced [the arbitrator] committed serious error." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

Intermet contends that the CBA does not require the payment of vacation benefits to anyone that was not employed on December 31 of the year. By contrast, the unions contend that the CBA requires the payment of vacation benefits in the event of plant closure provided that the employees worked the minimum number of hours required. This is a quintessential dispute "as to the meaning, interpretation and application of the collective bargaining agreement" that is squarely within the power of the arbitrator to adjudicate and that courts "have no business weighing the merits of." United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 568-69 (1960) (internal quotation marks omitted).

We need not address whether we would have reached the same conclusion as the arbitrator in interpreting the CBA. Rather, we must only satisfy ourselves that the arbitrator "acted within the scope of his authority under the contract." PPG Indus., 587 F.3d at 650. Of course, the CBA provides that "[t]he arbitrator shall have no power to add to, subtract from or modify this Agreement in any way, but shall instead be limited to the application of the terms of this Agreement in determining the dispute." The arbitrator acknowledged these limits on his role,

5

making clear in his decision that his duty was to "determine how the negotiators would have decided this case, based solely on the written language of the Parties Agreement." He further recognized that his role was "confined to the four corners of the Parties Wage Agreement" and "to interpret the meaning and intent of" that agreement.

The district court's judgment vacating the arbitrator's award rests principally on the court's determination that "there was no ambiguity in the [CBA] requirement that '[t]o be eligible for vacation benefits . . . an employee must be actively employed on December 31 . . . .'" While it is true that "the arbitrator cannot 'ignore the plain language of the contract' to impose his 'own notions of industrial justice,'" PPG Indus., at 652 (citing Misco, 484 U.S. at 38), the arbitrator did not do that here.

Article 11 of the CBA does not address how vacation benefits are apportioned in the event of a plant closure. Although the CBA is specific as to how vacation benefits are distributed in the case of retirement, discharge for cause, death, and layoffs, it is silent as to the circumstance of a plant closure. Moreover, given that some workers, like those that are laid off, are entitled to vacation benefits even though not actively employed on December 31, it is not at all clear that the December 31 trigger date applies in all circumstances.

6

The arbitrator found that when Intermet and the unions established the December 31 trigger date, "bankruptcy was not part and parcel to those discussions," and that "bankruptcy was not one of the provisions included in [the] December 31 trigger date." Thus, based on the "structure of the Parties Agreement," the arbitrator concluded that the vacation pay was "a bargained for benefit . . . based on work performed in the preceding year," and Intermet's employees were thus entitled to it if they met the other requirements of Article 11.

As in PPG Industries, "the arbitrator found the terms of the CBA ambiguous, and this court cannot second-guess that judgment." 587 F.3d at 654. In the absence of a clear provision, the arbitrator resolved the dispute in light of the whole agreement and his interpretation of the intent of the negotiators. That, he was entitled to do. See N. Ind. Pub. Serv. Co. v. United Steelworkers of Am., 243 F.3d 345, 348 (7th Cir. 2001) ("[A]rbitrators are empowered to fill gaps left in contracts."); CSX Transp., Inc. v. United Transp. Union, 29 F.3d 931, 936 (4th Cir. 1994) ("If the parties' written agreement is ambiguous or silent regarding the parties' intent, the arbitrator may use past practices and bargaining history to 'fill a gap' in the written contract." (internal citation omitted)).

7

III.

Accordingly, we reverse the judgment of the district court and remand the case for entry of an order enforcing the arbitration award.

<u>REVERSED AND REMANDED</u>