**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2102

WASHINGTON GAS LIGHT COMPANY,

Plaintiff - Appellee,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Local 96,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.   Liam O'Grady, District Judge.  (1:13-cv-00560-LO-TRJ)

Argued:  September 19, 2014         Decided:  December 2, 2014

Before TRAXLER, Chief Judge, NIEMEYER, Circuit Judge, and DAVIS, Senior Circuit Judge.

Reversed and remanded by unpublished opinion. Senior Judge Davis wrote the opinion, in which Chief Judge Traxler and Judge Niemeyer joined.

**ARGUED:** Mark James Murphy, MOONEY, GREEN, SAINDON, MURPHY & WELCH, PC, Washington, D.C., for Appellant.   Joseph Edward Santucci, Jr., MORGAN, LEWIS & BOCKIUS LLP, Washington, D.C., for Appellee.   **ON BRIEF:** David R. Broderdorf, MORGAN, LEWIS & BOCKIUS LLP, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Senior Circuit Judge:

The district court granted summary judgment in favor of Washington Gas Light Company ("the Company") against International Brotherhood of Teamsters, Local 96 ("the Union") vacating an arbitration award. The court reasoned that the arbitrator exceeded his authority under the terms of a collective bargaining agreement by interpreting the agreement in a manner inconsistent with its text. In this appeal by the Union, mindful as we are of the deference courts owe an arbitrator's decision-making, we reverse the judgment of the district court and remand with instructions to reinstate the arbitration award.

I

The Company and the Union are parties to a collective bargaining agreement ("CBA"). The CBA declares that arbitration is the chosen method of resolution for grievances unresolvable between the parties. Article XVIII of the CBA sets forth the grievance procedure. It provides for the selection of an arbitrator from a rotating panel of nine arbitrators, compiled and agreed to by the parties. Central to the dispute here is section 16(a), which permits either party, for any reason, to strike up to two arbitrators from the panel. It further provides that, "[i]f the Company or the Union elects to strike an arbitrator, it must do so not later than 24 hours before the

2

time the arbitration hearing is scheduled to begin." Art. XVIII, sec. 16(a), para. 5. J.A. 66.[*] While the arbitrator has the authority to "interpret and apply the provisions of [the] Labor Contract" in deciding grievances, the arbitrator cannot "alter, extend, modify or in any way change the provisions of [the] Labor Contract." Art. XVIII, sec. 17(a), para. 1. J.A. 67.

As the gravamen of the dispute in this case is focused on temporal benchmarks, we set forth in detail the dates of relevant events, all occurring in 2012.

On February 13, the Union filed a grievance regarding the discharge of an employee. On May 18, Jerome H. Ross was selected as the arbitrator to hear the grievance, and on June 1, a hearing was scheduled for August 14. On July 12, the Company requested that the hearing be rescheduled due to witness unavailability; the hearing did not occur on August 14. On October 3, the rescheduled hearing was set to commence on November 15, with December 5 or 6 as dates for a potential second day. On October 31, the Company stated that it could not attend the hearing on November 15, but could commence the hearing on December 6. On November 29, the Company informed the

---

[*] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

Union that it had decided to strike Arbitrator Ross pursuant to its right under section 16(a) of the CBA.

The Union disagreed with the Company's assertion of its authority to strike the arbitrator as of November 29 (it was untimely), and it notified the Company and Arbitrator Ross of its intention to appear for the December 6 hearing, expecting to address the issue of the timeliness of the Company's striking of Arbitrator Ross as a threshold matter. The Company responded that, as it had struck Arbitrator Ross, he was without jurisdiction and lacked authority to make any rulings.

Arbitrator Ross notified the parties that he intended to convene the hearing on December 6, to decide first the jurisdictional issue and then to proceed to the merits of the grievance depending on his decision on jurisdiction. The Company reiterated that it would not participate in the December 6 hearing, and it requested that if the hearing did go forward, the arbitrator consider only the jurisdictional issue and withhold ruling on the merits.

On December 6, Arbitrator Ross conducted the hearing with only the Union present. Michael Hampton, the Union President, testified both to the negotiating history of the striking provision and the merits of the grievance. On March 12, 2013, Arbitrator Ross issued his opinion. He found that the striking provision contained a latent ambiguity as to the timing of a

4

party's authority to strike an arbitrator. He credited Hampton's testimony regarding the negotiating history of the striking provision, see infra pp. 10-11, and concluded that the Company's November 29 decision to strike him from the roster was untimely under the CBA. Arbitrator Ross then went on to consider the merits of the grievance, and ruled in favor of the grievant, reducing his discharge to a 14-day suspension and reinstating him.

On May 3, 2013, the Company filed suit in the U.S. District Court for the Eastern District of Virginia, seeking to vacate the arbitration award. The parties filed cross motions for summary judgment, and the district court held a hearing on the motions. On August 3, 2013, the district court issued its decision granting the Company's motion for summary judgment. The Union timely appealed.

II

"Whether an arbitrator acts within the scope of his authority presents a question of law, and so we review the judgment of the district court de novo." PPG Indus. Inc. v. Int'l Chem. Workers Union Council of United Food & Commercial Workers, 587 F.3d 648, 652 (4th Cir. 2009) (hereafter PPG Industries) (citing Island Creek Coal Co. v. Dist. 28, United Mine Workers of Am., 29 F.3d 126, 129 (4th Cir. 1994)).

A court reviewing a labor arbitration award is limited to "determin[ing] only whether the arbitrator did his job -- not whether he did it well, correctly, or reasonably, but simply whether he did it." Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996). Therefore, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." PPG Industries, 587 F.3d at 652 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)). An arbitrator's award must be confirmed where it "draws its essence from the collective bargaining agreement." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960).

## III

The Union argues that the language of the striking provision is susceptible to multiple interpretations, and the arbitrator simply acted within his authority to use extrinsic evidence to find the correct interpretation. The Company counters that the arbitrator ignored the unambiguous language of the CBA, and that his decision reflected an impermissible construction of the agreement.

The Union has the better argument. The ambiguity inherent in the striking provision is unmistakable. The provision

6

requires a party to strike an arbitrator "not later than 24 hours before the time the arbitration hearing is scheduled to begin." Art. XVIII, sec. 16(a), para. 5. However, "the time" a hearing is "scheduled to begin" is susceptible to alternative, reasonable interpretations. It could be referring to the date on which the parties reach agreement as to a hearing date. Or it could be the date of a hearing that is first agreed upon by the parties. Or it could refer to the date on which the ultimate hearing is scheduled to begin when the parties have agreed to a postponement and rescheduled the date, as they did in this case. Thus, the answer to the question which "time" triggers the running of the 24-hour clock is not found in the plain language of the CBA. While the arbitrator did not articulate the specific date referred to by the language, he did conclude that the Company's November 29 decision to strike arbitrator Ross was well past the date specified in the arbitration agreement. The district court disagreed with this analysis and interpreted the striking provision to require a party to strike the arbitrator not later than 24 hours prior to the start of any rescheduled hearing, here December 6.

But it was not the task of the district court, nor is it our task on appeal, to interpret the CBA. That is "a matter left to the arbitrator." Westvaco Corp. v. United Paperworkers Intern. Union, AFL-CIO, 171 F.3d 971, 975 (4th Cir. 1999). By

7

the express terms of the CBA, the arbitrator had the authority to interpret and apply its provisions. The arbitrator's construction of the CBA was therefore bargained for "and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers, 363 U.S. at 599. "This same maxim applies even when the arbitrator's interpretation resolves a question relating to the scope of the arbitrator's own authority." Westvaco Corp., 171 F.3d at 975.

At the outset of his discussion and findings, Arbitrator Ross acknowledged that his authority was limited to an interpretation and application of the clear and unambiguous provisions of the contract. In the event that plausible, conflicting interpretations of contractual language arose, he reasoned, he could turn to extrinsic evidence to determine the parties' intent. The arbitrator highlighted the parties' competing interpretations of the striking provision before turning to an examination of the bargaining history.

The Company takes issue with the arbitrator's actions and urges us to find that the arbitrator ignored the plain language of the striking provision, but as we have described, the language of the provision is steeped in ambiguity. Thus, this case is readily distinguishable from our decisions, to which the

Company cites, that vacated an arbitration award on the ground that an arbitrator's interpretation was impermissible. See Mountaineer Gas, 76 F.3d at 610 (concluding that the arbitrator "blatantly ignored the unambiguous language" of the company's policy, and imposed a penalty that "appealed to his own notions of right and wrong"); Champion Int'l Corp. v. United Paperworkers Int'l Union, AFL-CIO, 168 F.3d 725, 730-32 (4th Cir. 1999) (finding that the arbitrator "drew on his own notions of fairness" to fashion an award that was not justified by the CBA or a separate agreement); U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO, 204 F.3d 523, 531 (4th Cir. 2000) (concluding that the arbitrator "negated [the] clear language" of the contract, and thus, the award "did not draw its essence from the agreement").

The arbitrator's sound finding of an ambiguity in this case permitted him to turn to extrinsic evidence — a move that we have expressly allowed. See CSX Transp., Inc. v. United Transp. Union, 29 F.3d 931, 936 (4th Cir. 1994) ("If the parties' written agreement is ambiguous or silent regarding the parties' intent, the arbitrator may use past practices and bargaining history to 'fill a gap' in the written contract.") (internal quotation marks and citation omitted). In PPG Industries, we similarly approved an arbitrator's reliance on extrinsic evidence to interpret the terms of a CBA where the CBA was

silent on the issue in dispute. 587 F.3d at 653. The arbitrator had to determine whether striking employees were considered "actively employed." Id. at 650. Because the CBA's definition of "actively employed" did not address striking employees, the arbitrator turned to the parties' bargaining discussions to determine their intent. Id. at 651. We stated that, "[g]iven the two-sentence CBA definition of 'actively employed' and the failure of the CBA to address strikers in either sentence, we cannot conclude that the arbitrator ignored the plain language of the CBA." Id. at 653. We then rejected the company's argument that the arbitrator erred in using extrinsic evidence. Because the arbitrator found the contract's terms ambiguous, he could properly consider extrinsic evidence to resolve the ambiguity.

Here, the striking provision does not make clear when a hearing is "scheduled to begin" for purposes of identifying the relevant 24-hour striking window. Hampton testified on behalf of the Union that the provision represented a compromise between the Company and the Union. According to Hampton, during contract negotiations, the Company proposed that either party be permitted to strike up to two arbitrators for any reason, "and at any time before the first witness is sworn in any arbitration." J.A. 18. The Union rejected the Company's proposal. Ultimately, the parties settled on the language at

10

issue. Hampton stated that, because it takes several emails for the parties to agree to a hearing date, the 24-hour period was understood to refer to the initially established hearing date, and not future dates resulting from agreed postponements.

The arbitrator's interpretation derived from the essence of the agreement, and he did not exceed the scope of his authority merely because his interpretation of the provision was contrary to the Company's, and certainly not because he relied on extrinsic evidence of the parties' intent. The Company, having contractually submitted to the arbitrator's judgment, cannot make an "attack on the correctness of the arbitrator's decision." PPG Industries, 587 F.3d at 653 (emphasis in original). This Court has repeated, time and again, that, "judicial review of arbitration awards is extremely limited-in fact, it is 'among the narrowest known to the law.'" U.S. Postal Serv., 204 F.3d at 527 (quoting Union Pac. R.R. v. Sheehan, 439 U.S. 89, 91 (1978)). In light of that standard, we decline to second-guess the arbitrator's decision.

The Company raises two alternative grounds on which it contends we should affirm the district court's vacatur of the arbitral award, namely, that the arbitrator overlooked a limitation on his jurisdiction set forth in the CBA, and that he was, in any event, disqualified from determining whether he had been properly stricken. The district court did not address

11

these issues; moreover, by declining to appear for the arbitral proceedings, the Company has not exhausted these claims by presenting them to the arbitrator in the first instance. Under the circumstances, we decline to consider them.

IV

For the reasons set forth, we reverse the judgment of the district court and remand with directions to enforce the arbitral award.

REVERSED AND REMANDED

12