**UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 400,**
**Plaintiff–Appellant,**

v.

**MARVAL POULTRY COMPANY, IN‑CORPORATED, Defendant–Appellee.**

No. 88–2118.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 8, 1988.

Decided May 30, 1989.

Robert Edward Paul (Zwerdling, Paul, Leibig, Kahn & Thompson, P.C., Washington, D.C., on brief) for plaintiff-appellant.

James W. Wimberly, Jr. (Monica M. Bekken, Wimberly, Lawson & Cobb, Atlanta, Ga., on brief) for defendant-appellee.

Before HALL, PHILLIPS and SPROUSE, Circuit Judges.

PHILLIPS, Circuit Judge:

The United Food and Commercial Workers, Local 400 (the Union) appeals from an order of the United States District Court for the Western District of Virginia denying its application for an award of attorney's fees. The Union requested the award on the grounds that Marval Poultry Company, Inc. (Marval) had challenged two arbitration awards in federal courts without justification. The district court held that the award of attorney's fees was unwarranted because Marval had challenged the arbitration awards under an arguable basis in law. We conclude, however, that Marval was clearly unjustified in challenging the merits of the arbitration awards in federal court and in raising there remedial issues that it had failed to raise at arbitration. Therefore, we hold that the district court erred in refusing to award attorney's fees to the union and accordingly reverse.

I

In the past, Marval and the Union have entered into collective bargaining agreements that covered certain maintenance and production employees. Each agreement contained a detailed grievance procedure, which, if necessary, culminated in arbitration deemed "final and binding" under the terms of the parties' agreements. The agreements further provided that the arbitrator's determination was enforceable in a court of competent jurisdiction.

Before the expiration of the last agreement on June 2, 1984, Marval terminated two covered employees. The grievance proceedings following these terminations form the background of the present action.

## A

On November 1, 1983, Marval discharged John Thomas Rexrode, a truck driver who had been involved in a traffic accident while driving one of Marval's trucks. The Union immediately filed an appropriate grievance, but the Union and Marval failed to reach an agreement during grievance discussions. The Union therefore, in April 1984, formally submitted the grievance to arbitration pursuant to the terms of the collective bargaining agreement. At arbitration, Marval argued that Rexrode's negligence and the severity of the accident warranted his dismissal. The arbitrator rejected Marval's argument, holding instead that Rexrode was not terminated for "just and proper cause" as required by the collective bargaining agreement. Accordingly, in its award dated October 25, 1984, the arbitrator revoked Rexrode's discharge, imposed a sixty-day suspension effective retroactively to November 1, 1983, and ordered Marval to reinstate Rexrode at the effective conclusion of the suspension with appropriate back pay and benefits.

Marval offered Rexrode conditional reinstatement on October 31, 1984, the condition being that Rexrode was to be transferred immediately to a different position at a lower wage rate. Rexrode declined the offer. Shortly after making its offer to Rexrode, Marval wrote the arbitrator, allegedly "seeking clarification" of its award. Marval pointed out the arbitrator's "mere oversight" in determining that while Rexrode was grossly negligent, his dismissal was not warranted even though the company fleet safety rules provided for discharge of a driver on his first offense of gross carelessness. Recognizing that the arbitrator's jurisdiction over the matter ceased upon rendering of the initial decision, the Union agreed to grant the arbitrator renewed authority to respond to Marval's request. After delayed receipt of Marval's letter and a subsequent request for clarification, the arbitrator responded on January 2, 1985, pointing out that its identification of Rexrode's "gross negligence" referred only to whether the challenged conduct was a Class I or Class II offense under the new company policy, not whether the fleet

safety rules were violated. Two weeks later, on January 16, Marval offered Rexrode full unconditional reinstatement which he also declined. Both parties agree that Rexrode's declination at this point tolls Marval's obligations as to reinstatement and back pay liability beyond January 16, 1985.

On February 7, 1985, the Union filed an enforcement action in district court under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982), requesting that the court order Marval to tender the awarded back pay. Marval responded with an answer and a counterclaim, seeking both a vacatur of the arbitration award and, alternatively, a declaratory judgment that its liability extended only to June 2, 1984, the date the collective bargaining agreement expired, rather than to January 16, 1985, the date of Rexrode's rejection of full, unconditional reinstatement.

## B

Geneva Shifflett, the second employee terminated by Marval before the expiration of the last collective bargaining agreement, was discharged on January 23, 1984 when she refused to accept alternative positions of employment after returning from an extended health-related leave of absence. Again the grievance discussions between Marval and the Union failed, and the Union formally submitted the grievance to arbitration. On February 15, 1985, the arbitrator awarded Shifflett reinstatement to her previous position and back pay from the date of termination to the date of reinstatement. Marval reinstated Shifflett at the end of March and a month later, on April 25, 1985, tendered back pay from the date of Shifflett's termination to the date the collective bargaining agreement expired. While Marval never sought to reopen the arbitration proceedings, it did file an action on May 6, 1985, in the district court in which the Union had earlier filed its enforcement action in the Rexrode case. In the Shifflett action, Marval sought to limit the arbitrator's back pay award to the life of the collective bargaining agreement.

## II

After consolidating the Rexrode and Shifflett actions, the district court considered cross-motions for summary judgment. On September 23, 1986, the court reiterated its previous ruling—announced at a hearing on the parties' motions—that the arbitration awards properly drew their essence from the collective bargaining agreement and were therefore valid. 645 F.Supp. 1174, 1176 (W.D. Va.1986). The court then considered the "only issue remaining"—whether the awards were enforceable—and concluded that the expiration of the collective bargaining agreement did not preclude awards of back pay or reinstatement after the date of expiration. The court noted that "[i]f Marval wished to limit its liability for back pay awards to the date of expiration ..., such provisions could easily have been inserted into the agreement...." *Id.* at 1180.

With respect to the preclusive effect of the prior arbitration, the court reasoned that "[t]he final and perhaps most forceful factor in favor of upholding the arbitrator's remedy of back pay and reinstatement is simply that the company failed to raise the issue of the expiration of the collective bargaining agreement during the pendency of the arbitration proceedings...." *Id.* The court concluded that "Marval's failure to raise these various points prevents these contentions from being considered at this very late date.... Such afterthoughts should not form the basis of continued, protracted litigation in federal courts." *Id.* at 1181.[1]

Marval appealed to this court and we affirmed on the district court's reasoning, noting that Marval's contention that it failed to raise the remedial defenses at arbitration because the issue of back pay was not litigated was implausible. We reasoned that "[t]he fact that no evidence of back pay was introduced nor precise back pay awards ever calculated did not relieve [Marval] of its duty to raise at arbitration all questions or matters relevant to the

outcome of the case[,]" including any effect the expiration of the collective bargaining agreement may have had and any issues pertaining to the employee's duty to mitigate damages through other employment. No. 86–1247, Unpub'd Op. at 4 n. 2 (4th Cir. May 20, 1987). [819 F.2d 1138 (Table)]

Before we rendered our decision, the Union moved for an award of fees and costs incurred in connection with the district court litigation. Pursuant to 28 U.S.C. § 636(b)(1)(B), the district court referred the matter to a magistrate who recommended awarding the Union $11,662.50 in attorneys' fees plus court costs because Marval had "embarked on a course of conduct that was a calculated assault" on federal courts' express reluctance to add to the layers of litigation in arbitrated matters and on the deference owed to decisions by arbitrators that draw from the essence of the labor contract. The magistrate reasoned that it could not

avoid the inferences from the record and the District Court's decisions that what Marval may have been doing as a matter of its principle was not substantially justified, reasonable or supported by a detached reading of the extant law. Therefore, [it found] that Marval's litigation stance before the District Judge was frivolous, unreasonable and without legal foundation, though subjectively not in bad faith.

After reviewing Marval's exceptions to the magistrate's findings, the district court rejected the magistrate's recommendation, reasoning that the award was inappropriate because Marval had challenged the arbitrator's awards "under an arguable basis in law." Nos. 85–0023–H, –0065–H, Unpub'd Op. at 5 (W.D. Va. May 24, 1988). The court noted that "in an appropriate case, where a party makes an *unjustified* challenge to an arbitrator's decision, the sanction of attorney's fees is necessary, 'lest federal labor policy be frustrated by judicial condonation of dilatory tactics that lead to wasteful and unnecessary litiga-

---

1. The court further pointed out that Marval had previously been involved in arbitration that resulted in similar awards. 645 F.Supp. at 1181. Therefore Marval was on sufficient notice of the need to raise the defenses at arbitration.

tion.' " *Id.* at 4–5 (*quoting International Ass'n of Machinists v. Texas Steel Co.*, 639 F.2d 279, 284 (5th Cir.1981) (emphasis added)). The court thought Marval's actions not "necessarily unjustified," however, because "Marval cited a host of cases, albeit under different factual settings," that supported its position. Unpub'd Op. at 5.

This appeal followed.

## III

The first question is whether under any circumstances an award of attorney fees might be proper in a case such as this.

■ Neither the collective bargaining agreement between Marval and the Union nor § 301 of the Labor Management Relations Act, under which this action was brought, provides for an award of attorney's fees to a prevailing party. Without such express contractual or statutory authorization, courts generally adhere to the American Rule which requires each party to bear its own litigation costs, including attorney's fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975). This general rule is subject to several narrow exceptions, however, that derive from the courts' historic equity powers. *National Ass'n of Letter Carriers v. United States Postal Serv.*, 590 F.2d 1171, 1174 (D.C.Cir.1978).

■ In a pre-*Alyeska* case, we held that the authority to award fees in actions brought under § 301 was derived from the Labor Management Relations Act itself, the constructions of that Act, and the "traditional practice of courts of equity." *Local 149, Automobile Workers of America v. American Brake Shoe Co.*, 298 F.2d 212, 216 (4th Cir.1962). While *Alyeska* clearly prohibits finding any statutory power to award attorney's fees unless Congress has

placed express authority in the statute under consideration, 421 U.S. at 269–70, 95 S.Ct. at 1627–28, it does not invalidate our decision in *American Brake Shoe* to the extent it based the authority to award fees under § 301 on the courts' inherent equitable power rather than the statute. *Letter Carriers*, 590 F.2d at 1179 n. 11. In *American Brake Shoe*, we held that the courts' equitable powers should be exercised and fees should be awarded "against a party who, *without justification*, refuses to abide by the award of an arbitrator." 298 F.2d at 216 (emphasis added). *See also UAW v. United Farm Tools, Inc.*, 762 F.2d 76, 77 (8th Cir.1985) (awards compelled by an "unjustified refusal to abide by an arbitrator's award"). Because actions pursued "without justification" can often be construed as "vexatious" or as "willful disobedience of a court order," the authority we recognized in *American Brake Shoe* falls squarely within the equitable exception to the American Rule that is countenanced by the Supreme Court in *Alyeska*. *See* 421 U.S. at 258–59, 95 S.Ct. at 1622. Therefore, if Marval's challenges to these arbitrators' awards were pursued in the district court "without justification," attorney's fees were awardable. *See International Ass'n of Machinists v. Texas Steel Co.*, 538 F.2d 1116, 1121 (5th Cir.1976).[2]

## IV

■ The next issue is whether an award of attorney fees was properly refused on the facts of this case. In addressing that issue, it is important to identify the standard or standards under which we review specific rulings granting or denying such awards—a matter easily confused by oversimplification. In general it is said—and accurately for the run of cases—that the decision whether and in what amount to

**2.** Marval suggests in its brief that an award of attorney's fees is punitive and must be construed accordingly. *See, e.g.,* Appellee's Brief at 8. It is well-established, however, that such awards are compensatory, attempting to reimburse the defending party for expenses incurred in countering the unjustified challenges. *See*

*Synergy Gas Co. v. Sasso*, 853 F.2d 59, 66 (2d Cir.1988). *Compare Baltimore Regional Joint Bd. v. Webster Clothes, Inc.*, 596 F.2d 95, 98 (4th Cir.1979) (award of monetary damages in arbitration construed as punitive not compensatory where no showing of injury to party).

award attorney fees is one commited to the award court's discretion, subject only to review for "abuse" of that discretion. As indicated, that is generally accurate, but only generally. While the ultimate decision to award or deny attorney fees typically has at least a large discretionary component, it may be revealed upon inspection that such a decision actually turned on an express or implicit finding of fact or conclusion of law that dictated the ultimate result. In the more typical case, the ultimate decision will be an amalgam—an exercise of discretion based upon explicit or implicit findings of fact and conclusions of law about the availability and scope of discretion. Review may correspondingly be an amalgam, depending upon the claims of error. If the claim is of error in underlying factfindings which infected the ultimate decision, review must proceed under the clearly erroneous standard; if of error of law infecting the ultimate decision, under the *de novo* review standard. Only if the claim of error goes exclusively to the impropriety of an ultimate exercise of available discretion is review solely under the abuse of discretion standard. *Cf. Zaldivar v. City of Los Angeles*, 780 F.2d 823, 828 (9th Cir.1986) (Rule 11 sanction order may be based on composite of factfindings, legal rulings, and discretion, hence reviewable accordingly).

We go through all this because we think the district court's denial of an attorney fee award here rested on a fully reviewable error of law rather than an exercise of discretion reviewable only for "abuse." Specifically we think the court erred as a matter of law in holding that Marval's legal challenge was not "necessarily unjustified" because Marval had proceeded under an "arguable basis in law." In so holding, we believe the district court erred in two respects. First, by failing to distinguish two different types of challenge to arbitration whose "justification," for the purpose here at issue, is measured by different standards. Second, by failing to take into account the significance of Marval's failure to have raised in arbitration the issues it sought belatedly and unsuccessfully to raise in the district court.

## A

■ Where a challenge goes to the fundamental issues of arbitrability or of whether an arbitration award "draws its essence" from the contract, the standard for assessing its justification is indeed the relatively lenient one of whether it has "any arguable basis in law." Because these challenges go to fundamental questions of the arbitrator's very power to act, they must be considered sufficiently "justified" for this purpose unless there is literally no reasonably arguable legal support for them. *See Western Elec. Co. Inc. v. Communication Equip. Workers, Inc.*, 409 F.Supp. 161, 178 (D.Md.1976) (finding of "no justification" requires "clear evidence that legal precedent is entirely on the side of the opposing party and that a reasonable person would know the law was completely one-sided").

■ Where, however, the challenge goes not to issues of the fundamental power of an arbitrator to make an award but to the merits of an arbitrator's award as made, the standard of justification is much more stringent. Indeed, because such challenges, if undeterred, inevitably thwart the national labor policy favoring arbitration, they must be considered presumptively unjustified. *Texas Steel*, 639 F.2d at 284.

■ Here, as indicated, we think the district court erred as a matter of law in assessing justification under the first rather than the second of these standards. Had it applied the appropriate standard of presumptive non-justification, it is obvious that the challenges here made were not justified so that a fee award was appropriate.

Marval apparently concedes that to the extent its challenges are effectively to the merits of the awards, its position is untenable and its challenges therefore unjustified. To avoid this, it argues that "the vast majority of [its] position involved remedy

and not the merits of the arbitration decisions." Appellee's Brief at 9. Specifically, Marval identifies as challenges solely to "remedy" its efforts to have both awards reduced to reflect that they could not extend past the life of the collective bargaining agreement, and its effort to have Rexrode's award reduced by the amount of his interim earnings or his unemployment compensation.

This attempted distinction is specious. The critical distinction is that these are challenges to an arbitrator's award as made rather than to threshold arbitrability or to a total departure from the labor contract's "essence." Furthermore, Marval overlooks that its challenge also sought to have the Rexrode award wholly vacated on the bald basis that the arbitrator had simply erred in finding no just cause for his discharge. This of course constituted a challenge to the merits of the most fundamental sort.

### B

Even were there some possible basis for making a distinction between challenges to "liability" and "remedy" in assessing their "justification" for fee award purposes, there is no "arguable basis" here for the procedure by which Marval sought belatedly to challenge the remedial aspects of the awards. These challenges were not made before the arbitrator, but for the first time in the district court—by counterclaim in the Rexrode action, by Marval's claim in the Shiflett action.

### C

■ We have held that a party to arbitration cannot "voluntarily engage in the arbitration of the issues submitted to the arbitrator and then attack the award on grounds not raised before the arbitrator." *International Chem. Workers Union v. Mobay Chem. Corp.*, 755 F.2d 1107, 1112 (4th Cir.1985). *See also Dreis & Krump Mfg. v. Int'l Ass'n of Machinists*, 802 F.2d 247, 255 (7th Cir.1986) ("A company dissat-

isfied with the decisions of labor arbitrators need not include an arbitration clause in its collective bargaining contracts, but having agreed to include such a clause it will not be permitted to nullify the advantages to the union by spinning out the arbitral process unconscionably through the filing of meritless suits and appeals."). Marval apparently concedes but seeks to avoid the impact of this salutary rule. It argues that it did not have an opportunity at arbitration to raise the issues concerning a reduction in the back pay awards because the matter of back pay was not litigated at the arbitration hearings and neither side presented evidence on the issue. This flies in the face of the record. As we specifically noted in our affirmance of the district court's grant of summary judgment for the Union, No. 86–1247, Unpub'd Op. at 4 n. 2 (4th Cir. May 20, 1987), [819 F.2d 1138 (table)] and as the district court itself recognized, 645 F.Supp. at 1181, Marval was obliged to raise at arbitration all matters that were relevant to the outcome of the case—which certainly included the likely remedy of reinstatement with back pay.

Marval claims that awarding fees against it for its failure to raise the remedy issues at arbitration would constitute a "direct assault on [the] well established arbitral practice and procedure" of arbitrating the issue of liability only, leaving the issue of remedy to be handled informally by the parties after arbitration. Appellee's Brief at 12–13. We disagree. Even if the usual practice were that described by Marval, it was not the practice followed in this case. The arbitrator obviously determined both the liability and remedy issues. Marval did not challenge the arbitrator's jurisdiction over any issue of remedy, i.e., the arbitrability of that issue, choosing instead to contest on the merits the extent of its liability. Moreover, as Marval itself points out, if the parties to arbitration are unable informally to reach an agreement on remedy, "the usual course is for an arbitrator to receive evidence on [remedy] *after* liability has been found." Appellee's Brief at 14. But Marval did not attempt to follow this

described "usual course." In its initial request for clarification of the Rexrode award, and in its later resubmission of the request, Marval did not raise any of the remedial defenses it later raised in the district court in its counterclaim to the Union's enforcement action. Similarly, in the Shifflett proceeding, Marval raised no purely "remedial" defenses during the arbitration, raising them for the first time in the claim it brought in the district court. "Parties to arbitration proceedings cannot sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before the arbitrator." *United Steelworkers of America v. Smoke Craft, Inc.,* 652 F.2d 1356, 1360 (9th Cir.1981).

█ While the district court rightly recognized that a losing party's "afterthoughts should not form the basis of continued, protracted litigation in federal courts," 645 F.Supp. at 1181, it then failed to hold, as it should have, that for this very reason Marval's litigation conduct here was "unjustified." The mere fact that there may have been an "arguable basis" for the substantive position belatedly raised, did not justify its belated raising for the first time in district court.

Because under these principles the claimants here were entitled to an award of attorney fees, we reverse and remand to allow the district court to make a proper award.

REVERSED AND REMANDED.