935 F.2d 1289
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Daniel K. WARNER, Plaintiff-Appellee,
v.
J.P. STEVENS & CO., INC., Defendant-Appellant.
 No. 90-2720.
 United States Court of Appeals, Fourth Circuit.
 Argued March 7, 1991.
Decided June 26, 1991.
 
 Appeal from the United States District Court for the District of South Carolina, at Greenville. G. Ross Anderson, Jr., District Judge. (CA-89-1730-3-6)
 Thomas Allen Bright, Haynsworth, Baldwin, Johnson & Greaves, P.A., Greenville, S.C. (Argued), for appellant; Katherine Dudley Helms, Haynsworth, Baldwin, Johnson, & Greaves, P.A., Greenville, S.C., on brief.
 Eugene C. Covington, Jr., Foster, Covington & Patrick, Greenville, S.C., for appellee.
 D.S.C.
 AFFIRMED.
 Before SPROUSE, Circuit Judge, FRANKLIN T. DUPREE, Jr., Senior United States District Judge for the Eastern District of North Carolina, sitting by designation, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal arises from the district court's holding that appellant maintained a severance payment plan covered by ERISA and that appellee was entitled to benefits thereunder. Appellant challenges that determination and the trial court's award of a pension credit to appellee. We affirm the opinion of the district court.
 
 I.
 
 2
 Appellee Warner was employed with appellant J.P. Stevens (JPS) for some twelve years until he was terminated on July 30, 1988, without cause. Eleven months earlier, Warner had relocated his family from New York to Greenville, South Carolina, at appellant's request. Ninety days prior to Warner's termination, JPS was taken over by West Point-Pepperell (WPP) which placed new management at JPS (hereinafter WPP/JPS). In an effort to cut costs, Warner's position was eliminated by the new management.
 
 
 3
 In his position, Warner had assisted appellant's General Counsel in the administration of executive benefits. Warner claims, WPP/JPS denies, and the trial court found that, at least since 1981, JPS had an unwritten severance policy which entitled executives to twelve months of current salary plus unused vacation, and continued coverage in the JPS pension, 401K, and medical insurance plans until the severance payments ceased. Since 1984, JPS had a written severance policy for non-executive employees which entitled them to salary continuation of one week's pay for each year of service with JPS plus unused vacation.
 
 
 4
 In May of 1988, after the takeover, WPP/JPS posted notices promising that the JPS severance plan would remain in effect for at least one year after the takeover and a more general notice that all JPS policies, benefits, and insurance coverage would remain in effect until the end of the year. When terminated, Warner received severance benefits in accord with the written policy for non-executives and was told that no unwritten policy existed.
 
 
 5
 Based on Warner's testimony as to his experience with the General Counsel, the testimony of former top personnel of JPS, the introduction of dozens of letters awarding twelve months severance pay to executives who were indistinguishable from Warner, and WPP's promise to continue JPS policies, the district court found that a severance pay plan covered by ERISA had been established. Further, Warner was entitled to recover under that plan. The district court found that appellant had taken no steps to alter the plan after the takeover and that the denial of payment was arbitrary and capricious. In addition, appellant had failed to comply with ERISA requirements: it did not file an annual report, submit a plan description to its employees, provide written notice of the reasons for denial of appellee's claim, or provide a full and fair review of this denial on appeal.
 
 
 6
 The district court further held that there would be no award of moving expenses, no pro rata bonus, no outplacement benefits, and no extracontractual damages. None of these determinations are challenged. Finally, in its conclusion, the district court stated that appellee was entitled to a lost pension credit of $36,000. No discussion of this figure was provided. This appeal followed.
 
 II.
 
 7
 Appellant constructs its argument around Donovan v. Dillingham, 688 F.2d 1367 (11th Cir.1982), where it was held that a plaintiff must show intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits in order to establish an ERISA plan. This Court has also specified elements to be found in an ERISA plan. In Holland v. Burlington Industries, Inc., 772 F.2d 1140 (4th Cir.1985), aff'd sub nom. Brooks v. Burlington Industries, Inc., 477 U.S. 901 (1986), this Court stated that a severance pay policy is an employee welfare benefit plan under ERISA where at least one purpose of the policy is to provide help for employees during periods of unemployment. Id. at 1145. Further, funding from general rather than specific sources does not alter the characterization of such a policy as an ERISA covered plan. Id. at 1146.
 
 
 8
 As for intended benefits, appellant argues that any benefits shown were not uniform to all employees. Some employees apparently received severance packages less than a full year in amount. Neither were intended beneficiaries shown, as the term "executive" (as opposed to non-executive) was not clearly defined at trial. Further, no source of financing was shown. Finally, no evidence was produced which indicated a procedure for applying for benefits.
 
 
 9
 These arguments are unpersuasive. The exceptions pointed to by appellant were primarily terminations after WPP took over. As such, they do not provide a sound basis by which to argue for the absence of a plan. Rather, they would indicate that practices did change significantly, but only after the takeover. As for sources of funding and the procedures for application, it was not error for the district court to assume that the company was the source of funding and the procedure for getting benefits was as simple as receiving a letter like one of the many introduced into evidence. Finally, it is clear that the purpose of such a severance pay policy would be to aid an employee during a time of unemployment. Appellee satisfies both the Holland and Dillingham standards.
 
 
 10
 There seems to be no reason to doubt the judgment of the district court on this issue. The evidence indicates that there was a program in effect, and it seems likely that appellant was trying to cut corners by denying appellee the benefits it had promised to retain. The takeover was apparently quite expensive, and WPP/JPS was eliminating appellee's position as a cost-cutting measure. Skimping on his severance package would be yet another way to save money.
 
 III.
 
 11
 The district court awarded appellee a pension credit of $36,000. Appellant disputes this amount and states that no evidence regarding the terms or conditions of appellant's pension plan was introduced at trial. Appellant cites one case in which an "actuarial adjustment" of a pension by a district court was held to be error by the Second Circuit Court of Appeals. See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053 (2d Cir.1989), cert. denied, 110 S.Ct. 2587 (1990). The case has little application here as there is no evidence of the use of actuarial statistics. Appellant believes that the appropriate remedy would be to require a recalculation of appellee's pension under a full year's credit.
 
 
 12
 A review of the trial transcript discloses that appellee testified that, if an additional eight months of severance pay were awarded to him, it would increase his pension to approximately $200 a month for life upon retirement. (JA 48.) With a life expectancy of fifteen years past retirement, the total value of the pension would be "about $36,000." Id. Appellant's cross-examination of appellee appears not to include this subject. This Court has indicated on several occasions that a party must state its objections at trial in order to reserve the right to appeal. See United Food & Commercial Workers, Local 400 v. Marval Poultry Co., 876 F.2d 346 (4th Cir 1989); Altvater v. Battocletti, 300 F.2d 156 (4th Cir.1962). Appellant's failure to object to this testimony or crossexamine on the subject precludes any complaint as to the amount of the pension credit now. Further, the district court's decision, based on the only evidence before it, is not clearly erroneous.
 
 
 13
 There being no error in the determinations of the district court, that opinion is hereby
 
 
 14
 AFFIRMED.